Good morning, Your Honor. It's Tony Farmani on behalf of Mr. Hahn. Your Honor, as you know, the case, this case has been certified for several questions. I'll go ahead and start with the Confrontation Clause claims, which I think are the most important claims, unless the Court has any other suggestions. But I wanted to begin by letting the Court know that this is a very unique case in the sense that Mr. Hahn was convicted of felony murder. There was no intentional homicide here, and he got a life without the possibility of parole based on the accusations that he sexually assaulted the victim here, Mr. Dane Williams, and he died during that sexual assault. But what we have here, Your Honor, is that there's a man who's actually serving life without the possibility of parole, and he never had an opportunity to confront two of his chief accusers, one of whom was the nurse, Ms. Kwachi, who took the, who performed the actual SART examination that revealed the evidence, the actual evidence that linked them to the homicide. And the other one, of course, would be Jeremiah. And they're separate and apart. They're not really related to one another. Different laws apply to each. I'll go ahead and start with the nurse. And just to let the Court know, Melendez-Diaz is right on point, and so is Bull Cumming, two U.S. Supreme Court cases that are right on point. And Melendez-Diaz stands for the proposition, the holding, that certificates such as the one that was prepared and the actual performance of the examination itself that was communicated through various witnesses, because they had to use the result to be able to conduct a DNA, that was, that is testimonial, Your Honor. And... Before you, before you get much further, I just wonder why we have this case, this issue. Why should we consider a confrontation clause regarding the preliminary hearing question, testimony, when it was never raised before in this appeal? It's never come on up before. Why should we now allow at this late date a new issue to be sprung on us? I'm sorry, if Your Honor is suggesting that the issue was not exhausted in state court, if I'm mistaken, I apologize. Is that what Your Honor is referring to? It's never come up in the state or the federal court until now. It has, Your Honor. It was litigated in both court. It was definitely litigated, I know, in the district court level where the question became whether or not he had sufficient opportunity for cross-examination at the preliminary hearing and therefore rendering it admissible. And since he didn't, and that was the argument. Prior to that time, it hadn't been raised? My understanding, Your Honor, it has been raised. It might have been not the exact same arguments that I proffered to the court, but certainly the claim itself had been raised. So it seems, so just to be clear, we've got the two confrontation clause issues, correct? We've got the one you're saying about reintroducing the preliminary hearing testimony. Yes, Your Honor. And then we have the fact that the person who actually conducted the testing was not the actual witness. Yes, Your Honor. The actual sought examination that led to the DNA evidence that connected them to the homicide. So this is a huge, this is the most important witness. Right, so let's talk about that because you mentioned the Bull Cumming case. Yes, Your Honor. And, you know, the confrontation clause jurisprudence of the Supreme Court is not Lake Tahoe clear. Yes, Your Honor. You know, it's a little opaque at times. Yes, Your Honor. There's a passage from the concurrence of Judge and Bull Cumming, the Sotomayor. You know where I'm going with this. Yes, Your Honor. Where she says it would be a different case if, for example, a supervisor who observed an analyst conducting a test testified about the results or report about such tests. We need not address what degree of involvement is sufficient here. He's going to stand up, opposing counsel is going to stand up and say the law is completely unclear and therefore there cannot be an AEDPA violation. What's your response to that? Bull Cumming and Williams, the next case, which I think is a problem for you. Well, Your Honor, my response would be first, I don't think the State Court's decision here is even entitled to deference under AEDPA. And the reason for that is because although the petitioner here raised the confrontation clause claim that he raised encompassed not only the photographs that were admitted or that were discussed during the testimony of the surrogate witness, but in addition to that, the actual testing itself, the conducting of the testing and obtaining the results for later testing. And that part of the Court's decision, the State Court never addresses that part of it. It just focuses on the photographs.  What we have a problem with is a nurse conducting the examination, the very examination that led to the discovery of the DNA of the homicide victim, and that witness is not in court to be confronted. So AEDPA doesn't apply here, Your Honor. I get that. But was the question presented to the State Court and the State Court just didn't discuss it? Yes, Your Honor. You see, that's a problem. Yes, Your Honor. Because if the issue is presented and the Court decides it, even if the Court doesn't discuss it, we're required to give deference. Yes, but there are nine circuit cases, and I think there might be one U.S. Supreme Court, other circuit cases, not a Supreme Court, where they talk about if the State Court provides a rationale for its decision, then we have to accept the rationale. Right. So this was not a silent denial. If it were a silent denial, Your Honor, you're absolutely correct. Then the presumption would be that the State Court addressed all the claims. Right. But here we have an actual rationale, a written rationale, and we know the State Court just glossed over it because it was problematic, Your Honor. It was a problematic issue for the State Court to address. But, Counsel, I'm just reading what the State Court said. I mean, the State Court goes through Bull Cummings. It goes through Williams. It hits all the right cases. Correct, Your Honor. So you're saying that even though they hit all the right cases and they do offer a rationale, we can look through that, essentially, to still say no edpa deference because it didn't give the exact rationale on this argument? Yes, Your Honor, and there's nine circuit cases outside in the brief where they talk about if the State provides a rationale, then we take that rationale and we see if it adjudicated the claim. So in this case, we have an adjudication, but we have a partial adjudication. We know we don't have an adjudication on the prejudice bond. We know that for sure because they didn't even go that far. They just said there was no violation. So we go to the violation itself, and the violation itself, let's say the violation includes A, B, and C, Part A, B, and C. The State here only addressed Part A. So because we have the rationale, we have to say, well, what did the State Court do here? It addressed only one element of the three-part claim. So we're going to give a deference to that one element but not to the others. So let's assume you're right about that, and I'm assume, okay? If you assume you're right about that, he's going to stand up and he's going to say, well, even if all that's true, this is all harmless anyway. Well, it can't be harmless, Your Honor, because to determine the harmlessness in a confrontation clause context, you'd have to assume that there was full damage on cross-examination. You have to assume that this evidence would not erase the evidence, erases the act itself. But the burden would be on you to show that, because we're on habeas, right? Correct. That would be substantially injurious to the fact. But there is a set of law that applies particularly to confrontation clause claims, Your Honor, and that says it has to be fully realized. The full extent of cross-examination must be assumed to have been fully realized. So in this case, if we assume that, which is the law, and we go from that premise, Your Honor, then the result would be that the act of actually doing the test, labeling the evidence, those things, they would have come in, but they wouldn't have tied it to Jeremiah. So you're saying that a Melendrez-Diaz thing can really never be harmless? I think it can be. I think it would be a very difficult case. In this case in particular, Your Honor, if you take that evidence away, then you have nothing. The whole case is built on this DNA evidence that was derived from Jeremiah. The whole case. And how was that DNA evidence derived? It came from the testing itself. It came from that origin. And we don't have the accuser. I mean, I've spoken to many lay people about this. And one of the things I say, if you're up on trial, if you're in trial for your life in a murder case, would you want the person who did the testing on the victim, would you want to be able to confront them? Absolutely, Your Honor. Well, of course that's right. But that's not the legal question. But that is the legal question, Your Honor. No, the question is not whether they would like it. Oh, yes. Yeah. I mean, exactly. You're absolutely right, Your Honor. Particularly in this case, Your Honor. Particularly in this case. And we know Ms. Huachi, just like the bull coming case where the actual person who had conducted the test, and he left the office on paid leave. In this case, we know she has some health issues. But we don't know the extent of those health issues. We don't know if they were happening at the time of the performance. We also know that Jeremiah suspected they had been sexually assaulted. And we know that he was trying to track down Mr. Hong. So there's no question at all that this was something that could have been explored and should have been explored, Your Honor, on cross-examination. The method. Let me ask you a question, which I admit may not fit, but it struck me enough times I'd want to ask it anyway, or I'd be sorry. The problem we have, as I understand it, is the second person is saying what the test shows, rather than having the first person say what the test shows. Now, that occurs quite often with expert witnesses. That is, they actually were not there at the happening, but they take the evidence and then give their opinion. It strikes me this is a parallel, that the first nurse was not there, but the second nurse had the data in front of her, and then as a supervisor she indicated what it showed. Does those lines of cases of law fit here? And if not, why not? Respectfully, Your Honor, I don't think they do because, number one, in an expert setting where you have somebody coming in and speaking about different analysis that they've done, they're not coming in in an accusatory way. It's not coming in at trial saying that this was what was collected. For instance, in a DUI case where you're accusing somebody having drank over the limit, the test that comes in, the test itself that comes in, that's accusatory, that's testimonial, because it is as if somebody's getting up there and testifying in direct examination. So in an expert setting, in that scenario, somebody came in and talked about how that blood alcohol level generally would impair someone's driving abilities, seeing abilities, observations. I think that's where the expert opinion would come in. But I've never seen a trial where somebody would come in and testify to the actual result itself in an accusatory way, which is what happened here, Your Honor. Let me ask this related to precisely what you're saying. What do you do with the argument that at the time the testing was performed on Jeremiah, they had no idea who the defendant was? That is to say this was not accusatory. This was used later as part of the case against him, but at the time the testing was performed, they had no idea who the perpetrator was. Well, two responses to that, Your Honor. Number one, we know from the circuit precedent that I've interpreted and applied U.S. Supreme Court cases, which you can consider because number one, even if it did, you can consider. We know that it doesn't have to be accusatory. Otherwise, every test, any test you do, because we don't know. We don't know, for instance, when you're doing a substance of cocaine, you don't know if it's cocaine yet. We don't know if the person was doing it. Even if the person was handling the cocaine, we don't know if they were doing it for illegal purposes. So it's never accusatory to begin with. When it comes at trial is when the accusation itself happens. The accusation happens at trial, Your Honor, not beforehand. And in this case in particular, what makes it even a little different is that Jeremiah actually knew, actually suspected Hong of sexually assaulting him because he's calling him. He's trying to track him down. Way before he goes in, he goes to a medical facility on base. And after he goes to the medical facility on base is when he's transferred to the soft examination. So even if we assume the accusation has to occur before the trial itself, before the event, then in this case, I think we have plenty of facts or circumstances that would indicate that there was accusation at the beginning. Yes, Your Honor. Let me ask one further question, and then I'll let you alone. I just wonder why we should, as a panel, consider the Confrontation Clause claim regarding the preliminary hearing testimony when it was never raised before this appeal. Isn't there a waiver someplace along the line? Your Honor, I'm going to go back and look to make sure, but I am somewhat confident, Your Honor, that this issue itself, we're talking about the preliminary hearing issue, Your Honor, the Jeremiah's testimony. I'm somewhat confident the issue was raised. I know for a fact it was raised at the trial court level. The doctor testifying issue. The doctor, the nurse testifying issue, Your Honor. Why don't we do this, Mr. Farney? Do you want to reserve your time, then during the break you can maybe get an answer to this question. So fair enough. So I think what we'll do is, Mr. Farney, we're going to stop the clock. During the break he's going to be listening, but he's also going to be confirming that both arguments were raised to the trial court and as well that they're not waived. Yes, Your Honor. Thank you. I understand. Appreciate that. Thank you very much. Good morning, Your Honors, and may it please the Court. Christopher Beasley, Deputy Attorney General on behalf of the Respondent. Let me save Mr. Farney some time. The issue as to the preliminary hearing piece was never raised as he is raising it here in the state courts or in the district court. This is what the claim was that was raised in the state courts and in the district court. Whether the victim, Jeremiah, was unavailable, that was the claim that was litigated. And the claim was that the prosecutor didn't do enough to get Jeremiah to come to court, that the prosecutor should have used a number of other resources, statutes, federal statutes, to compel the victim to show up in court. That is the claim that was raised in the state courts. That is the claim that was raised in the district court. And all of a sudden, here on appeal, the claim is there was insufficient opportunity to cross-examine the victim, Jeremiah, at the preliminary hearing. That is a completely different issue. It was not raised in the state courts, and it was not raised in the district courts. It is not certified before this court, and therefore it is not properly before this court. So Judge Wallace, you're absolutely correct. That claim is forfeited. It's unexhausted. It shouldn't be before this court. It shouldn't even be addressed by this panel. I hear that argument, but I'm not entirely convinced. That is to say, if you're arguing that there was insufficient opportunity to cross-examine at the preliminary hearing, and he is now unavailable, well, that's the reason why you want him in person now. And so that's part of it. I view that as sufficiently connected to what the argument was that it is in front of us. You can disagree. I understand. I respectfully disagree with that. You may win anyway, but it seems to me that it's in front of us. And if it is, and even if it is, and this is why I addressed it in my brief, even if it is, we don't have a confrontation problem here because the United States Supreme Court has said, look, the question is did you have an opportunity to cross-examine. And in this case, that's exactly what happened at the preliminary hearing. Jeremiah did show up for the preliminary hearing. He was there, and he was extensively cross-examined. The only thing that he couldn't be cross-examined about was potential prior drug use because the court found that to be irrelevant. And so any question that was raised about that, there was an objection raised by the prosecutor, and the trial court then sustained those objections. But everything else was free game. Everything else. It was a lengthy cross-examination during the preliminary hearing, and so there was plenty of opportunity to cross-examine. Furthermore, the United States Supreme Court has said, you don't get cross-examination as effective as you want. It's the opportunity. And since there was the opportunity, and it wasn't only just an opportunity, but it was a taken opportunity. He availed himself of that opportunity. We have no confrontation problem here. And you would say we would review that question under AEDPA? Yes. So it's not only the argument you just made, it's would a reasonable judge, would only an unreasonable judge come to the conclusion you want us to come to? Yeah. Yeah. Yeah. The question is, if Judge Fletcher is correct, that it is those two issues are sufficiently connected than it was before the state court. It's not unexhausted. And then the state court did pass upon it, even if it was silent. The question then is, did the state court make a decision, reach a decision that was contrary to or unreasonable application of United States Supreme Court precedent? An error that was obvious and indisputable. And I would submit that we don't have that kind of an error here, if that was an error at all. So what about the question about the nurse? Yeah. Great. That's where I want to go next. Thank you, Judge Owen. As to the nurse, what I have failed to hear today is what testimonial evidence Nurse Nellie conveyed from Nurse Kawachi. What I have heard is an attempt to expand the Confrontation Clause from testimonial statements to collected physical evidence, photographs, anal swabs. The Confrontation Clause doesn't contemplate that. The Confrontation Clause is about testimonial statements. And Nurse Nellie never offered anything that Nurse Kawachi said or opined or concluded. Instead, Nurse Nellie looked at a photo that Nurse Kawachi took, and a camera is not a witness, and a photograph is not testimonial, and she offered her own personal expert testimony and opinion about what was depicted in that photograph. Was she qualified as an expert? I don't know. So you just said expert testimony, which is why I asked the question. Well, yeah, that's a good question. I don't know, and perhaps I shouldn't call her an expert. She offered her testimony. She offered her testimony. And my question is, do I have to treat it as expert testimony? And your answer is, well, I'm not so sure. Yeah, because I don't know if there was a 402 hearing in the trial court about whether she's an expert. I don't recall having seen that she was qualified. I don't recall either. But nonetheless, she is a forensic nurse. She conducts these kinds of examinations. She's the owner of the forensic lab where this SART exam took place. She's the supervisor for Nurse Nellie. She supervises and reviews all reports that come through. So she's intimately involved with the operations of her facility. She's qualified to offer her opinion as to what this picture depicts. That's not a confrontation problem. She's available for confrontation. She's available for cross-examination. So the defense is able to cross-examine her extensively about the picture, about what her observations are, why she draws the conclusions that she drew, and there's plenty of opportunity for confrontation. And so there was no violation of the confrontation clause in the testimony that Nurse Nellie offered. Mr. Farmani has noted multiple times that this evidence was central to this case. This is a murder. Jeremiah's not the killed person. His testimony, that evidence goes to modus operandi, which was important in this case, but it wasn't the exclusive evidence on modus operandi. We have four other witnesses testifying about that modus operandi. So you could exclude Jeremiah entirely, and we still have the modus operandi necessary to connect this defendant to this murder. Well, of course, there were two counts with respect to Jeremiah himself. Correct. That's correct. And you're saying, well, even if... I think you're saying that even if we were to say, okay, this is fatal as to the counts against Jeremiah, we've got the murder count and we've got the two counts with respect to Williams. That's correct. That's exactly what I'm saying. That's exactly what I'm saying. I think my position is clear. I don't want any extra credit. I will submit unless this court has any further questions. I don't, Judge Fletcher. Let me ask Judge Wallace. Judge Wallace, any questions? No, I'm fine, thank you. The questions I had have been answered by the attorney. Thank you, counsel. Thank you, Your Honors. If I may just really quickly, with respect to the exhaustion issue that Judge Wallace brought up, I'm going to go ahead and agree with Judge Fletcher in that being that... That does not surprise me. The U.S. Supreme Court, in evaluating a claim such as the Jeremiah's claim, the confrontation clause, there are two prongs. One is unavailability. You have to show unavailability. Second, you have to show full extent of cross-examination, at least cross-examination on matters that matter. In this case, the examination was not adequate at the preliminary hearing. We know that because the defense counsel raised the issue right before the preliminary had ended, and she wasn't allowed for the cross-examination, or be called Jeremiah, because the judge felt that this was a preliminary hearing and would deal with it at the trial. So I think the issue of exhaustion, Your Honor, would be that they're hand-in-hand. They go one and together. And then the other confrontation clause, of course, the state is not arguing that I was unexhausted. I just want to make it clear here that the surrogate nurse, not only the surrogate nurse, but other witnesses, they not only testified to these photographs, but they talk about how this witness collected the blood, urine, the DNA evidence, and then labeled, sealed, got the evidence ready for the police. I mean, this is testimonial. This is what testimonial is all about. This is where you get to cross-examine the person who did all this so that you make sure that they're accurate. And we know we can't just assume they're accurate from Melendez Diaz. We still have to have the opportunity to cross-examine the person who made those accusations. So that's all I've got. I mean, there are other issues, and I think they're interrelated with one another. But unless the court has any questions on the other issues, I've got two minutes. I can give Judge Owens a little sooner break. Any questions, Judge Wallace? No, thank you. I'm satisfied. All right, thank you. Thank you very much for your argument, Mr. Fermante. Thank you both for your argument and briefing in this interesting case. I'll just put it that way. This matter is submitted. We'll move on to the next one.
judges: WALLACE, FLETCHER, OWENS